UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN B WILLIAMS,

Plaintiff,

v.

TRANSWORLD SYSTEMS INC., et al.,

Defendants.

Case No. 25-cv-09527-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 15, 31

Pending before the Court are two motions to dismiss Plaintiff's complaint. The Court finds these appropriate for disposition without oral argument and the motions are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions.

### I.   BACKGROUND

On December 16, 2025, Plaintiff filed the operative complaint against Defendants Transworld Systems, Inc. d/b/a Transworld Collections ("Transworld") and the Regents of the University of California d/b/a UCSF Medical Center and UCSF Health ("UCSF") for "unlawful medical billing, refusal to validate disputed charges, coercive debt-collection practices, and denial of medically necessary care." Dkt. No. 10 ("SAC") at 1.

Plaintiff alleges that he visited UCSF for two ophthalmology visits in April 2025 and May 2025, and he was told that no payment was due and he was fully covered by Medicare Advantage. *Id.* at 3–4. In June 2025, he learned that he had been billed more than $26,000 for the visits, with an out-of-pocket responsibility of nearly $2,000. *Id.* at 5. Plaintiff alleges that he disputed the charges in writing, but UCSF referred his account to Transworld for debt collection without further validation. *Id.* Transworld then allegedly demanded payment and "highly intrusive

personal information, including tax returns, proof of citizenship, marital status documentation, and records of medical expenses incurred outside UCSF." *Id.*  UCSF then "refused to provide Plaintiff with further ophthalmologic care unless he paid the disputed charges or submitted the personal documentation demanded by [Transworld]." *Id.* at 6.

Plaintiff claims he "faces ongoing denial of medical care, imminent reputational harm from potential credit reporting, coercive pressure to surrender statutory rights, and deterioration of his medical condition." *Id.*  Plaintiff brings claims against both Defendants for violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), violation of the Fair Credit Reporting Act ("FCRA"), financial elder abuse, and violation of California's Unfair Competition Law ("UCL"). *Id.* at 6–8.  Plaintiff additionally brings a claim against Defendant Transworld for violation of the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at 6.  Finally, Plaintiff brings claims against Defendant UCSF for violation of the No Surprises Act, violation of the Hospital Price Transparency Rule, violation of the Americans with Disabilities Act ("ADA"), violation of due process, and medical malpractice. *Id.* at 7–9.[1]

The Court previously denied Plaintiff's two applications for a temporary restraining order. *See* Dkt. Nos. 9, 16.  Defendants now move to dismiss.  Dkt. No. 15 (UCSF); Dkt. No. 31 (Transworld).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

---

[1] Plaintiff's medical malpractice claim is somewhat distinct from his other claims.  Plaintiff alleges that he suffered a severe adverse reaction after an injection during one of the visits to UCSF, which later required emergency treatment.  SAC at 4.  He claims UCSF negligently administered the injection. *Id.* at 9.

United States District Court
Northern District of California

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Additionally, "[p]leadings must be construed so as to do justice." Fed. R. Civ. Proc. 8(e). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). Nevertheless, "pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Even a "liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.   UCSF'S MOTION TO DISMISS (DKT NO. 15)

UCSF moves to dismiss eight of the nine claims against it for failure to state a claim and lack of standing. Dkt No. 15 ("Mot") at 2. It does not seek to dismiss Plaintiff's medical malpractice claim. [2]

---

[2] As a preliminary matter, Plaintiff observes that "Defendants repeatedly disregarded Court-ordered response deadlines in the TRO/PI track." Dkt. No. 18 at 2. It's true that Defendants did not respond to Plaintiff's prior TROs by the deadlines, *see* Dkt. Nos. 6, 11, but neither of the Defendants had been formally served at that time.

United States District Court
Northern District of California

United States District Court
Northern District of California

### a. Violation of the Rosenthal Act (Claim Two)

Plaintiff claims that "UCSF violated the Rosenthal Act by referring a disputed, unvalidated debt to collections." SAC at 6. The purpose of the Rosenthal Act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and small business debts and to require debtors to act fairly in entering into and honoring those debts." Cal. Civ. Code § 1788.1(b). To state a claim, Plaintiff must allege that "(1) the plaintiff is a 'debtor,' (2) the debt at issue is a 'consumer debt,' (3) the defendant is a 'debt collector,' and (4) . . . the defendant violated one of the liability provisions of the [Rosenthal Act]." *Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 WL 5219053, at *17 (N.D. Cal. Sept. 17, 2013).

UCSF argues that Plaintiff did not adequately allege that it is a debt collector or that it violated a provision of the Rosenthal Act. *See* Mot. at 15–16. A "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). California state courts have interpreted this to be broader than the FDCPA's definition of a "debt collector" and to mean "a person who regularly engages in the act or practice of collecting money, property or their equivalent that is due or owing by a natural person as a result of a transaction between that person and another person, in which the natural person acquired property, services, or money on credit, primarily for personal, family, or household purposes." *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 295–96 (2018).

The Court agrees that Plaintiff has not adequately alleged facts from which the Court can conclude that UCSF was a "debt collector." Plaintiff alleges that UCSF billed him $26,000 for two outpatient visits. SAC at 5. When Plaintiff disputed the bill, UCSF "did not validate the charges" and "referred the disputed account to Defendant Transworld." *Id.* UCSF then allegedly refused subsequent treatment "unless [Plaintiff] paid the disputed charges or submitted the personal documentation demanded by" Transworld. *Id.* at 6. None of these facts plausibly suggest that UCSF "regularly engages in the act or practice of collecting money." *Davidson*, 21 Cal. App. 5th at 295. If anything, Plaintiff's allegations suggest that "debt-collection agency" Transworld, SAC at 2, engages in the act or practice of collecting money on UCSF's behalf when

patients dispute the underlying bill.

Plaintiff argues that he "plausibly alleges that UCSF/The Regents participated in or caused unlawful collection activity on a disputed consumer debt (including by forwarding disputed debt to a third-party collector and enabling continued collection without validation)." Dkt. No. 18 ("Opp.") at 10–11. But this does not suggest that UCSF regularly collects debts.[3] Accordingly, the Court **DISMISSES** this claim as to UCSF.[4]

### b. Violation of the FCRA (Claim Three)

Plaintiff brings claims against UCSF for violations of 15 U.S.C. §§ 1681e(b) and 1681s-2, alleging that it "threatened to furnish, and [has] the present ability to furnish, inaccurate and disputed information to consumer reporting agencies, despite knowledge that the debt is invalidated and disputed." SAC at 7.

UCSF first argues that "Plaintiff has not alleged any facts to show that [UCSF] is a consumer reporting agency." Mot. at 17. Only consumer reporting agencies ("CRAs") are liable under § 1681e(b). *O'Connor v. Cap. One, N.A.*, No. CV 14-00177-KAW, 2014 WL 2215965, at *7 (N.D. Cal. May 29, 2014); 15 U.S.C. § 1681e(b) (noting that "a consumer reporting agency . . . shall follow reasonable procedures"); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (requiring a plaintiff to allege that a CRA prepared a report containing inaccurate information). The FCRA defines a CRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Plaintiff does not

---

[3] In addition, the Court is skeptical that the act of referring a debt to a debt collector itself means that an entity is engaging in the act or practice of collecting money—if it did, the definition of "debt collector" would be broadened to include almost every entity that has to deal with unpaid bills. Because Plaintiff has not plausibly alleged that UCSF regularly collects debts, the Court does not reach this issue. If Plaintiff chooses to amend this claim, he should more fully explain why the Rosenthal Act extends to an entity like UCSF.

[4] The Court does not reach UCSF's remaining arguments. If Plaintiff chooses to amend this claim against UCSF, he should more clearly identify what provision(s) of the Rosenthal Act UCSF has allegedly violated and how.

plead any facts from which this Court can reasonably infer that UCSF is a CRA, and Plaintiff does not directly respond to UCSF's argument on this point. *See generally* Opp.[5]

Next, UCSF argues that Plaintiff cannot bring a claim under § 1681s-2(a) because there is no private right of action. Mot. at 18. The Court agrees. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009) (finding private right of action under § 1681s-2(b) but not § 1681s-2(a)); 15 U.S.C. § 1681s-2(d) (noting that provisions in § 1681s-2 (a) "shall be enforced exclusively" by federal and state officials).

Finally, UCSF argues that Plaintiff did not plead that "he disputed the charges with a consumer reporting agency" or that UCSF "received notice from a consumer reporting agency regarding plaintiff's dispute" under § 1681s-2(b). Mot. at 19. "[T]o state a claim under [§ 1681s-2(b)], a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681–2(b)(1)(A)–(E)." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (quotation omitted); *see also Gorman*, 584 F.3d at 1154 (holding that "notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)"). The Court agrees that Plaintiff did not plead these two elements.[6] Because the Court agrees that Plaintiff has not pleaded a cause of action for §§ 1681e(b) or 1681s-2, the Court **DISMISSES** this claim as to Defendant UCSF.

### c. Violation of the No Surprises Act (Claim Four)

Plaintiff argues that "UCSF failed to provide a Good Faith Estimate for non-emergency

---

[5] While the Court grants leave to amend, it is unlikely that Plaintiff will be able to adequately allege that UCSF is a CRA.

[6] A Ninth Circuit memorandum disposition held that a plaintiff could adequately plead that a CRA notified a furnisher of a dispute by (1) alleging that he notified a CRA and (2) eliminating his prior allegations that the CRA *did not* notify the furnisher. *Pace v. Bank of Am. Corp.*, 537 F. App'x 735, 736 (9th Cir. 2013) (non-precedential case the Court considers for its persuasive value). The Ninth Circuit noted that the CRAs in that case had a legal obligation to notify the furnisher within five days under 15. U.S.C. § 1681i. The Court does not opine here on what facts a plaintiff must specifically allege to plausibly establish that a CRA notified a furnisher of the dispute. Plaintiff has not alleged that a CRA was involved at all here, and that is fatal to his § 1681s-2(b) claims.

United States District Court
Northern District of California

outpatient services, depriving Plaintiff of informed financial consent, in violation of 42 U.S.C. § 300gg-111." SAC at 7. UCSF argues that there is no express or implied private right of action under the No Surprises Act. Mot. at 19–21.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "If Congress does not provide a private right of action explicitly within a statute's text, [courts] must determine whether Congress implied one." *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021). Four factors are relevant in determining whether a statute contains an implied right of action: "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create a private right of action or to deny one; (3) whether an implied private cause of action for the plaintiff is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law." *Id.* (quotation omitted) (cleaned up). "[T]he Supreme Court has elevated intent into a supreme factor, and [the] other three factors are used to decipher congressional intent." *Id.* (quotation omitted); *see also Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010) ("[A]n implied right of action is only authorized when there is clear evidence Congress intended such a right to be part of the statute.").

The vast majority of courts considering the No Surprises Act have held that there is no express or implied private right of action. *See, e.g.*, *Axis Neuromonitoring, LLC v. Aetna Inc.*, No. 3:25-CV-01048 (SVN), 2026 WL 795260, at *5–*8 (D. Conn. Mar. 20, 2026) (collecting cases and finding no express or implied private right of action); *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25 CIV. 1686 (PAE), 2025 WL 2371537, at *17 (S.D.N.Y. Aug. 14, 2025) (noting that "all but one court to consider the question have held that there is no private right of action under the [No Surprises Act] to enforce [independent dispute resolution] awards"); *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025), *cert. denied*, No. 25-441, 2026 WL 79855 (Jan. 12, 2026) (same). Courts have observed that the act has "extensive dispute resolution process[es] between insurers and medical providers with very limited judicial review," which "indicate[s] the intent of Congress not to

7

provide any private right of action," even where the plaintiff was "arguably a member of the class the statue is intended to benefit and the cause of action is not particularly one traditionally relegated to state law." *Los Robles Emergency Physicians Med. Grp. v. Stanford-Franz*, No. 2:23-CV-9487-DSF-MARX, 2024 WL 2106951, at *2 (C.D. Cal. Feb. 8, 2024); *FHMC LLC v. Blue Cross & Blue Shield of Arizona Inc.*, No. CV-23-00876-PHX-GMS, 2024 WL 1461989, at *3 (D. Ariz. Apr. 4, 2024) (noting that "[a]n implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances").

However, the above cases arose in a slightly different posture, where plaintiffs sought to enforce independent dispute resolution awards relating to payments "required to be made by the plan or coverage pursuant to subsection (a)(1) or (b)(1)." *See* 42 U.S.C. § 300gg-111(c)(1). The dispute resolution process there provides a remedy for (1) group health plan or health insurance issuers and (2) providers or facilities to dispute how much the former owes the latter for emergency services and non-emergency services from out-of-network providers under the No Surprises Act. *See id.*; *id.* § (c)(2)(A) (requiring the Secretary to establish a resolution process to determine "the amount of payment under the plan or coverage for such item or service furnished by such provider or facility"). These are "binding" determinations that "shall not be subject to judicial review" except in limited cases. *Id.* § (c)(5)(E)(i).

In contrast, Plaintiff appears to be narrowly challenging UCSF's alleged failure to provide a good faith estimate of costs, not its failure to comply with subsections (a) and (b). It's unclear which exact provision Plaintiff is bringing his claim under. Plaintiff alleges that UCSF has violated § 300gg-111, but the only provision directly dealing with good faith estimates is § 300gg-111(f), which imposes requirements on *group health plans and insurance issuers* to provide good faith estimates of costs. Plaintiff may have intended to argue that UCSF violated its obligations as a provider to give notice of the "good faith estimated amount that such provider or facility may charge the participant, beneficiary, or enrollee for such items and services" under 42 U.S.C. § 300gg-132(d)(2)(B) of the No Surprises Act. Or Plaintiff may have intended to argue that UCSF violated its similar notice obligations under 42 U.S.C. § 300gg-136. In any event, none of these subsections are governed by the independent dispute resolution process at issue in prior cases.

8

Nevertheless, the Court agrees that the No Surprises Act does not provide Plaintiff with a private right of action here. Plaintiff does not dispute that there is no express private right of action under the act. Nor does Plaintiff identify anything in the text or structure of the No Surprises Act that suggests an implied private right of action. In fact, Congress explicitly assigned enforcement authority for violations of the providers' obligations to the states and the Secretary. 42 U.S.C. § 300gg-134(b)(1) ("If a provider or facility is found by the Secretary to be in violation of a requirement . . . the Secretary may apply a civil monetary penalty . . . ."); *id.* § (a) (describing state enforcement); *cf. id.* § 300gg-22 (granting explicit enforcement authority for 42 U.S.C. § 300gg-111 to the Secretary with limited judicial and administrative review). Congress further directed rulemaking to establish "a process to receive consumer complaints of violations," *id.* § 300 gg-134(b)(3), and required the Secretary to establish a process through which "an uninsured individual" who received "a good-faith estimate of the expected charges" could "seek a determination from a selected dispute resolution entity for the charges to be paid by such individual," *id.* § 300gg-137(a). This patient-provider dispute resolution process was implemented in 45 C.F.R. § 149.620, which permits uninsured patients to initiate dispute resolution when the total billed charges are at least $400 more than the provider's good faith estimate. *Id.* § 149.620(a), (b).[7]

The detailed resolution mechanisms that Congress integrated throughout the No Surprises Act—particularly those dealing with patient-provider disputes regarding good faith estimates—are inconsistent with an intention to provide an implied private right of action, as are the provisions otherwise granting enforcement authority to states and the Secretary. Moreover, there is nothing in the text or structure of the statute that presents clear evidence of an implied right of action. Accordingly, the Court **DISMISSES** Plaintiff's No Surprises Act claim.[8]

---

[7] Because Plaintiff is insured under Medicare, he may not be eligible for this dispute resolution process. But that fact does not mean Congress intended to grant him an implied right of action—it just reflects a choice by Congress as to enforcement priorities. Congress could have drafted this act in a number of ways, and the language of the statute clearly reflects deliberate choices about how to approach comprehensive dispute mechanisms, without including private rights of action.

[8] The Court does not reach UCSF's remaining arguments.

United States District Court
Northern District of California

**d.  Violation of the Hospital Price Transparency Rule (Claim Five)**

UCSF also argues that there is no private right of action for Plaintiff to bring a claim under the Hospital Price Transparency Rule.  Mot. at 23.  The rule "implements section 2718(e) of the Public Health Service (PHS) Act, which requires each hospital operating within the United States, for each year, to establish, update, and make public a list of the hospital's standard charges for items and services provided by the hospital" and "implements section 2718(b)(3) of the PHS Act, to the extent that section authorizes [the Centers for Medicare and Medicaid Services ("CMS")] to promulgate regulations for enforcing section 2718(e)."  45 C.F.R. § 180.10.  Congress intended section 2718 to bring down the cost of health care coverage, in part by "requiring disclosure of negotiated rates [to] help more patients select hospitals with more affordable rates."  *See Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 535 (D.C. Cir. 2020).

While Plaintiff may be a part of the class that section 2718 (codified as 42 U.S.C. § 300gg-18) was intended to benefit, the plain language of the statute and the implementing regulations suggests that Congress did not intend to create a private right of action.  All the provisions grant explicit enforcement authority to CMS.  *See, e.g.*, 45 C.F.R. § 180.70(a)(1) ("CMS evaluates whether a hospital has complied with the requirements under §§ 180.40, 180.50, and 180.60."); *id.* § 180.70(b) ("If CMC concludes that the hospital is noncompliant . . . CMS may take any of the following actions . . . ."); *id.* § 180.90(a) ("CMS may impose a civil monetary penalty on a hospital identified as noncompliant according to § 180.70 . . . ."); *see also* 42 U.S.C. § 300gg-18(b)(3) ("The Secretary shall promulgate regulations for enforcing the provisions of this section and may provide for appropriate penalties.").  Plaintiff does not directly dispute that there is no private right of action, instead arguing that the Court should allow leave to amend so Plaintiff can frame this as a predicate violation for the UCL.  Opp. at 12–13.  Because the Court agrees that there is no implied or explicit private right of action, the Court **DISMISSES** this claim.

**e.  Financial Elder Abuse (Claim Six)**

UCSF argues that Plaintiff has not stated a claim for financial elder abuse because he "does not allege that he has paid the charges which he disputed with UCSF" or that UCSF has otherwise taken any real or personal property.  Mot. at 24.  Financial abuse of an elder occurs when a

United States District Court
Northern District of California

10

defendant "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both," or assists in doing so. Cal. Welf. & Inst. Code § 15610.30(a).  "[A] person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." *Id.* § 15610.30(c).  The Court agrees that Plaintiff has not alleged that he was deprived of any property right—Plaintiff has disputed the charges, but it's not clear that he's paid anything or otherwise lost or suffered an impairment to any property right.  In his opposition, Plaintiff admits that UCSF only "attempted" to obtain money or property.  Opp. at 13.  The Court **DISMISSES** this claim as to Defendant UCSF.

### f.  Violation of the UCL (Claim Seven)

UCSF argues that Plaintiff has not alleged "facts to show that he suffered an injury in fact, either through loss of money or other property, as a result of the alleged unfair competition by" UCSF.  Mot. at 25.  Under the UCL, Plaintiff only has statutory standing if he alleges "an injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Plaintiff argues that he has identified unlawful, unfair, and fraudulent conduct.  Opp. at 14.  But he does not identify what money or property he has lost because of UCSF's allegedly unlawful conduct.  *Cf. Lombard Flats LLC v. Fay Servicing LLC*, No. 22-CV-05686-LB, 2023 WL 6541866, at *5 (N.D. Cal. Oct. 6, 2023) ("It is difficult to say that an allegedly misleading debt-collection letter, standing alone, caused loss of money or property . . . ."); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1199 (E.D. Cal. 2010) (rejecting argument that possible future non-judicial foreclosure could establish UCL standing).  As a result, the Court **DISMISSES** this claim as to Defendant UCSF.[9]

---

[9] Plaintiff potentially could satisfy this requirement in an amended pleading. *See, e.g.*, *Lombard Flats*, 2023 WL 6541866, at *5 (noting that there would be standing "if, for example, the plaintiffs alleged damage to their credit history because of [defendant's] debt-collection practices"); *Janti v. Encore Cap. Grp., Inc.*, No. 09CV1969 JLS (CAB), 2010 WL 3058260, at *7 (S.D. Cal. Aug. 3, 2010) (noting that $50 filing fee in separate state court action to defend against debt collection efforts was sufficient).

United States District Court
Northern District of California

### g.  Violation of the ADA (Claim Eight)

Plaintiff alleges that he "is a seventy-two-year-old permanently disabled Medicare Advantage beneficiary" and that "UCSF discriminated against Plaintiff on the basis of disability by denying medically necessary care unless Plaintiff paid disputed charges or submitted intrusive personal documentation."  SAC at 2, 8.  UCSF argues that Plaintiff has not pleaded that it "knew of [p]laintiff's disability or that . . . [it] discriminated against him because of his disability."  Mot. at 26.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

The Court agrees that Plaintiff does not provide any factual basis from which the Court can plausibly infer that UCSF discriminated against him on the basis of his disability.  Plaintiff does not directly respond to UCSF's argument on this point.  Instead, he claims that "he was denied continued ophthalmologic care because he disputed the debt and refused to provide invasive financial/citizenship/marital documentation to a collector."  Opp. at 14.  If anything, this suggests that Plaintiff was denied care for a reason other than his disability.  Accordingly, the Court **DISMISSES** this claim.

### h.  Violation of Due Process (Claim Nine)

Plaintiff claims that "UCSF deprived Plaintiff of property and liberty interests without due process by imposing unlawful charges, refusing validation, denying care, and leveraging state authority to collect a disputed debt."  SAC at 8.  UCSF argues that Plaintiff has not adequately

United States District Court
Northern District of California

stated a protected property interest. Mot. at 27. A plaintiff bringing a procedural due process claim must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). "To constitute a protected property interest, an individual must have 'more than an abstract need or desire' or 'unilateral expectation' for a benefit, but rather a 'legitimate claim of entitlement' based on, inter alia, 'existing rules or understandings that stem from an independent source such as state law,' a 'statute defining eligibility,' a contract 'creat[ing] and defin[ing]' certain terms, or some other 'clearly implied promise.'" *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1121 (N.D. Cal. 2018) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–78 (1972)).[10]

Plaintiff has not adequately alleged facts establishing that he has a constitutionally protected liberty or property interest in specific future medical care at UCSF or that UCSF's efforts to impose allegedly unlawful charges somehow deprived him of some liberty or property interest.[11] Plaintiff does not respond to UCSF's argument, instead stating that "if the Court finds sovereign immunity limits damages claims against an arm of the state, Plaintiff should be granted leave to amend." Opp. at 15. But the Court does not understand UCSF to be arguing that sovereign immunity bars Plaintiff's claim. Accordingly, the Court **DISMISSES** this claim.

## IV.    TRANSWORLD'S MOTION TO DISMISS

Transworld moves to dismiss Plaintiff's FCRA, financial elder abuse, and UCL claims. *See* Dkt. No. 31 ("Mot.") at 3. It does not move to dismiss Plaintiff's FDCPA or Rosenthal Act claims. *Id.* at 3 n.1.

### a.    Violation of the FCRA (Claim Three)

Like UCSF, Transworld argues that (1) Plaintiff has not pleaded that it is a consumer

---

[10] To the extent Plaintiff is alleging a substantive due process claim, "[a] threshold requirement to [both] a substantive [and] procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994).

[11] More generally, it is not clear from the complaint what services UCSF denied Plaintiff, which makes it more difficult to understand what Plaintiff contends he was deprived of.

13

reporting agency, and § 1681e(b) does not apply; (2) there is no private right of action for § 1681s-2(a); and (3) Plaintiff has not pleaded that Transworld was notified by a CRA that Plaintiff disputed its credit reporting under § 1681s-2(b).  Mot. at 5–6.  As before, the Court agrees with these arguments, and there is nothing specific about the allegations against Transworld that changes that conclusion.

Plaintiff argues that "[c]ourts routinely deny dismissal [of a § 1681s-2(b) claim] where notice [from a consumer reporting agency to a furnisher] can be inferred or proven in discovery." Dkt. No. 33 ("Opp.") at 4.  But the case he cites does not support that proposition.  *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (assessing whether a claim can be brought under this section against a furnisher).  Plaintiff has not alleged that any CRA was ever involved in this matter, so the Court certainly cannot infer that Transworld was notified by a CRA of the dispute.  As a result, the Court **DISMISSES** this claim as to Defendant Transworld.

### b.  Financial Elder Abuse (Claim Six)

Transworld argues that Plaintiff did not plead that it "obtained any property from Plaintiff, let alone that the taking of Plaintiff's property was for a wrongful use."  Mot. at 7.  As before, the Court agrees that Plaintiff has not adequately alleged that Transworld deprived him of any property right.  Plaintiff argues that "California courts recognize that attempted takings and coercive practices fall within the statute."  Opp. at 5.  But his cited case addresses a different issue regarding whether "a merely incorrect denial of policy funds" may constitute "wrongful use." *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 657 (2016).  The deprivation in that case was clear and adequately alleged—a plaintiff had allegedly not been given funds that they were entitled to by contract.  *See id.*  As a result, the Court **DISMISSES** this claim as to Defendant Transworld.

### c.  Violation of the UCL (Claim Seven)

Finally, Transworld argues that "Plaintiff fails to allege he suffered any injury or lost money or property as a result of any specific conduct by" Transworld.  Mot. at 7.  As with UCSF, the Court agrees.  Plaintiff claims he "alleges economic injury including costs responding to unlawful collection efforts, credit-related harms, and denial of necessary medical treatment tied to

14

Defendant's conduct." Opp. at 5.  But Plaintiff does not identify any non-conclusory facts in his complaint regarding what money or property he has lost as a result of Defendant's alleged conduct.  Accordingly, the Court **DISMISSES** this claim as to Defendant Transworld.

## V.   UCSF'S MOTION TO STRIKE

Plaintiff seeks "[d]eclaratory relief that the disputed charges are unlawful and unenforceable" and "[i]njunctive relief prohibiting collection, reporting, or denial of care based on the disputed charges." SAC at 9.  UCSF moves to strike Plaintiff's request for declaratory relief as "duplicative of the substantive claims and remedies already sought," and argues that it is "unclear how [P]laintiff's request for declaratory relief will remedy [P]laintiff's claims." Mot. at 28–29.  UCSF also moves to strike Plaintiff's request for injunctive relief, arguing that it is "vague, overbroad and not narrowly tailored." *Id.* at 29.  Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f).

Following this order, Plaintiff's only remaining claims are his FDCPA claim against Transworld, his Rosenthal Act claim against Transworld, and his medical malpractice claim against UCSF.  Plaintiff's specific requests for declaratory and injunctive relief only plausibly relate to the first two claims.  But declaratory and injunctive relief are unavailable for Rosenthal Act and FDCPA claims. *See Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 992–93 (N.D. Cal. 2014); *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 3523696, at *10 (N.D. Cal. June 4, 2015) (same).  Accordingly, the Court will **STRIKE** these requests for relief for now, with leave to amend if Plaintiff adequately pleads claims that warrant such relief. *Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) ("When striking a claim or defense, leave to amend should be freely given if doing so does not cause prejudice to the opposing party.").[12]

Next, UCSF asks the Court to strike Plaintiff's request for statutory damages under the Rosenthal Act, statutory damages under the FCRA, and treble damages under the financial elder

---

[12] Given this straightforward resolution, the Court does not reach UCSF's specific arguments on the motion to strike, and it will reserve judgment until the claims remaining before the Court are clearer.

United States District Court
Northern District of California

abuse statute.  Mot. at 30–32. Because the Court has dismissed all of these claims as to Defendant UCSF, the Court **DENIES** the motion as moot.

Finally, UCSF states that it is not liable for punitive damages under California Government Code § 818.  Mot. at 32.  California Government Code § 818 states that "[n]otwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  *See also* Cal. Gov't Code § 811.2 (noting that Defendant UCSF is a public entity). Accordingly, the Court **STRIKES** any remaining claim for punitive damages against UCSF as to the medical malpractice claim.  *Cf. McCrary v. UCLA Health*, No. LA CV18-10001 JAK (JPRx), 2020 WL 2025392, at \*12 (C.D. Cal. Jan. 31, 2020) (striking punitive damages for claims that arise under California law).

## VI.   CONCLUSION

Defendant UCSF's motion, Dkt. No. 15, is **GRANTED IN PART** and **DENIED IN PART**.  Defendant Transworld's motion, Dkt. No. 31, is **GRANTED**.  Claims Four and Five are **DISMISSED WITHOUT LEAVE TO AMEND** against all Defendants.[13]  Claims Three, Six, Seven, Eight, and Nine are **DISMISSED WITH LEAVE TO AMEND** against all Defendants. Claim Two is **DISMISSED WITH LEAVE TO AMEND** as to Defendant UCSF only.  The Court **STRIKES WITH LEAVE TO AMEND** Plaintiff's request for punitive damages, injunctive relief, and declaratory relief against UCSF.  Any amended complaint must be filed within 28 days of the date of this order and may not include any new claims or defendants.  This order **VACATES** the May 7, 2026 hearing date.

The Court further **SETS** a case management conference in this case on May 5, 2026, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public,

---

[13] Because the Court has found that no private right of action exists as to Claims Four and Five, granting leave to amend would be futile, since no factual amendment could cure this purely legal deficiency.  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."); *Dunn v. Moll*, No. 22-35545, 2024 WL 813470, at \*1 (9th Cir. Feb. 27, 2024) (non-precedential case affirming dismissal without leave to amend where there was no private right of action).

United States District Court
Northern District of California

United States District Court
Northern District of California

and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are **DIRECTED** to file, by April 28, 2026, (1) either a joint case management statement or separate statements under Civil Local Rule 16-9(a); and (2) the standard ADR form, Stipulation and Proposed Order Selecting ADR Process.

The Court further advises Plaintiff, who is representing himself, that he can seek assistance at the Legal Help Center if he desires assistance complying with this order.  The Legal Help Center provides free information and limited-scope legal assistance to pro se litigants.  More information about the Legal Help Center is provided at https://cand.uscourts.gov/representing-yourself.  Telephone appointments may be scheduled either over the phone at (415) 782-8982 or by email at FedPro@sfbar.org.  The Court advises Plaintiff that in particular the Help Center may be able to help him assess whether narrowing the number of claims in order to focus the case could be beneficial.

**IT IS SO ORDERED.**

Dated:     4/10/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

17